UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE SOCIETY FOR DIVERSITY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-04589-TWP-MPB |
| ) | |
| DTUI.COM, LLC, and BILLY VAUGHN, ) | |
| ) | |
| Defendants. ) | |

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on Defendants DTUI.com, LLC's ("DTUI") and Billy Vaughn's ("Vaughn") (collectively, "Defendants") Motion to Dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (Filing No. 15). Plaintiff The Society for Diversity, Inc. ("SFD") initiated this action alleging trademark infringement and other Lanham Act violations and state law claims. (Filing No. 1.) SFD seeks an injunction against the Defendants and monetary damages it suffered due to alleged improper use of its trademarks. Defendants contend that all of the activities complained of occurred through the operation of Defendants' websites, and these de minimis contacts through the operation of a website are insufficient to confer personal jurisdiction. For the reasons stated below, the Motion to Dismiss is **granted.**

### I.   BACKGROUND

The following facts are not necessarily objectively true, but as required with a Rule 12(b)(2) motion, the court accepts as true the well-pleaded factual allegations and draws all reasonable inferences in favor of the non-movant. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705

(7th Cir. 2019). The following is not the entirety of the facts alleged in the Complaint, but only those relevant to the motion before the court.

SFD, an Indiana corporation with its principal place of business in Indianapolis, provides professional qualification credentials to companies who are responsible for educating employees about diversity in the workplace. (Filing No. 1 at 1-3.) DTUI is a limited liability company organized under the laws of the State of Nevada. Vaughn, the managing member of DTUI, is a resident of and domiciled in the State of California. (Filing No. 16 at 2; Filing No. 16-1.)

SFD and DTUI are competitors in the business of providing diversity training to government and businesses. (Filing No. 25-3 at 1 ¶3.) SFD owns registered trademarks for the terms CDP (Certified Diversity Professional), and CDE, (Certified Diversity Executive). *Id*. It confers CDP and CDE designations to persons that pass its rigorous tests and peer-evaluation of their work product. *Id*. SFD's designations are recognized by businesses and governments throughout the world as proof that a person is competent in the field of diversity and inclusion. *Id*. A CDP or CDE designation expires unless it is renewed following additional testing.

The Defendants also provide services in the diversity education market, and they began advertising that their educational services would allow students to use the CDP and CDE designations owned by SFD. SFD had not authorized the Defendants to confer CDP or CDE designations on the Defendants' students. (Filing No. 1. at 2.) The Defendants also distributed goods comprising training materials bearing the marks CDP and CDE. (*Id.* at 5.)

SFD filed the instant Complaint for Trademark Infringement and Related Claims on November 18, 2019, alleging the Defendants advertise and sell products and services that infringe its trademark rights amounting to false and misleading representations in violation of the Trademark Act, trademark infringement under California and Indiana state laws, and unfair

competition under Indiana common law and under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and related state common law. (Filing No. 1.) SFD alleges the Defendants' infringing conduct is willful and seeks enhanced damages and attorneys' fees due to the exceptional nature of the case. In its Complaint, SFD contends:

> This Court may exercise personal jurisdiction over the Defendants because of their systematic contacts with and purposeful availment of this forum. Specifically and without limitation, Defendants sell, offer for sale and market the subject infringing goods and services in this judicial district directly through the Internet, including websites such as https://dtui.com/ and https://diversityexecutiveacademy.com.

(Filing No. 1. at 3.) The Defendants subsequently filed a Motion to Dismiss on January 21, 2020 pursuant to Fed. R. Civ. P. 12(b)(2) contending this Court lacks personal jurisdiction over both DTUI.com, LLC and Billy Vaughn. (Filing No. 15.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. After a defendant moves to dismiss under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). The extent of plaintiff's burden is dependent upon the method in which the court determines the issue of personal jurisdiction. *Id.* "When the … court holds an evidentiary hearing to determine [personal] jurisdiction, the plaintiff must establish [personal] jurisdiction by a preponderance of the evidence." *Id.* But where, as here, the court determines personal jurisdiction based only on reference to submissions of written materials, the plaintiff simply needs to make a *prima facie* case of personal jurisdiction. *GCIU–Employer Ret. Fund v. Goldfarb Corp.,* 565 F.3d 1018, 1023 (7th Cir. 2009). In determining whether the plaintiff has met the *prima facie* standard, the court may consider affidavits and all other

3

documentary evidence that have been filed, and any conflicts must be resolved in favor of the plaintiff as the non-moving party. *Purdue Research*, 338 F.3d at 782.

### III. DISCUSSION

The Lanham Act, 15 U.S.C. § 1051 *et seq.*, under which SFD presents its federal claims, does not have a special rule for personal jurisdiction. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). Since SFD brings claims under the Lanham Act, a federal district court has personal jurisdiction over a non-resident defendant if a court of the state in which it sits would have such jurisdiction. *Purdue Research*, 338 F.3d at 779. The court engages in a two-step analysis to determine personal jurisdiction over a non-resident defendant. "First, the court must determine whether its exercise of jurisdiction over the defendant comports with the forum's long-arm statute. Assuming the first step is satisfied, the court must then determine whether this exercise is authorized by the Due Process Clause of the Constitution." *Bell v. Halcyon Bus. Publications, Inc.*, No. 1:17-cv-04418-SEB-MJD, 2018 WL 2364091, at *2 (S.D. Ind. May 24, 2018). Indiana Trial Rule 4.4(a) serves as Indiana's long-arm statute, which expands personal jurisdiction to the fullest extent permitted by the Due Process Clause of the Constitution. "Because Indiana's long-arm statute 'reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the [f]ederal Due Process Clause,' we only need discuss the second step of this analysis." *Id.* (quoting *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 966-67 (Ind. 2006)).

There are two types of personal jurisdiction: general and specific jurisdiction. General jurisdiction is proper wherever the defendant is said to be domiciled, or "at home," whereas specific jurisdiction arises out of forum-related activity. *Advanced Tactical*, 751 F.3d at 800. Vaughn is domiciled in California and not Indiana, therefore, this Court does not have general

4

jurisdiction over Vaughn. To have general jurisdiction over an out-of-state corporation, the corporation's affiliations with the forum state must be "so continuous and systematic as to render [the corporation] essentially at home the forum state." *Goodyear Dunlop Tires Operation, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). Because DTUI does not have its principal place of business in and is not headquartered in the state of Indiana, and does not have continuous and systematic affiliations with Indiana, the Court also does not have general jurisdiction over DTUI. Therefore, to determine whether it can exercise personal jurisdiction over the Defendants, the Court must analyze whether specific jurisdiction exists in this case.

To exercise specific jurisdiction over a defendant, the defendant must have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. "Specific jurisdiction is appropriate where (1) the defendant has purposefully directed activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (internal citations omitted). The Seventh Circuit has identified three requirements for determining whether the purposeful direction requirement is met: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt – that is, the plaintiff would be injured – in the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010). "A single contact with the forum state may satisfy the standard of minimum contacts if the contact produces a substantial connection with the forum state and the connection is related to the lawsuit." *Commissioning Agents, Inc. v. Long*, 143 F. Supp. 3d 775, 787 (S.D. Ind. Oct. 29, 2015).

"However, a defendant cannot be brought into a jurisdiction 'solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person.' *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The Defendants contend this Court lacks personal jurisdiction over them. They explain that Vaughn is domiciled in and a resident of the State of California, and has been for fifty-five years ([Filing No. 16 at 2](#); [Filing No. 16-1](#)). He has never lived in Indiana, he does not have an Indiana driver's license, does not hold any personal assets in Indiana, has never paid taxes to the State of Indiana, and visited Indiana only once ten years ago. Thus, the Defendants argue the Court does not have jurisdiction over Vaughn. *Id.*

Regarding DTUI, the Defendants point out that the business does not maintain any offices in Indiana, has no employees in Indiana, holds no assets located in Indiana, pays no taxes to the State of Indiana, and has no bank or other financial institution accounts in Indiana. Although DTUI operates a website that is accessible in Indiana, the Defendants argue this is irrelevant as it is not hosted on a server physically present in Indiana. ([Filing No. 16 at 2](#).) DTUI has provided diversity training to only one corporate client who is located in Indiana, but the Defendants contend that relationship ended approximately seven years ago. (*Id.* at 2-3.) The Defendants note that DTUI has never held any seminars, trainings, or offered any other in-person services for general enrollment in Indiana, and does not specifically seek out, target, or otherwise purposefully market to customers in Indiana. (*Id.* at 3.)

The Defendants contend that SFD relies solely on the operation of DTUI's interactive website and sending a few emails to people who live in Indiana as the basis for personal jurisdiction. Relying on previous opinions by this Court, the Defendants argue that cases relating to claims of trademark and patent infringement often do not lend themselves to personal

6

jurisdiction over an out-of-state defendant when the most contact with the forum state is a website that is managed from out of state. *See Commissioning Agents*, 143 F. Supp. 3d at 791 (citing *Advanced Tactical*, 751 F.3d at 796 and *Polymer Tech. Sys., Inc. v. Jant Pharamcal Corp.*, 2015 WL 1526058 (S.D. Ind. Apr. 3, 2015)); *see also Quick Tech., Inc. v. Sage Group PLC*, 313 F.3d 338, 345 (5th Cir. 2002). To find personal jurisdiction, the plaintiff's injury must arise out of or relate to the defendant's forum conduct, and Defendants argue that "simply operating a website with allegedly infringing material that is accessible from, but does not target, a particular jurisdiction is insufficient to meet this standard." (Filing No. 16 at 6.) Furthermore, the Defendants contend their contact with Indiana "must be because of [their] own doing," and not the unilateral activity of another party or third person, and that SFD has not provided evidence to establish that DTUI or Vaughn purposefully made contacts with Indiana sufficient to confer jurisdiction. (Filing No. 27 at 3.)

In response, SFD argues Indiana's long-arm statute confers jurisdiction over the Defendants because they transacted with Indiana residents and have done "far more than hosting a website". (Filing No. 25 at 11.) SFD contend the Defendants have used SFD's trademarks in and caused confusion in Indiana. Asserting the Defendants contacts with Indiana "are far more pervasive," SFD explains the Defendants have:

- sent Indiana residents emails offering infringing CDP training, including emails to persons in Greentown and Kokomo, Indiana;
- sent Indiana residents invoices… for infringing training services;
- conferred … CDP credentials to persons in Indiana;
- maintained a "student database" that includes persons with Indiana addresses; and
- contacted at least one person that got her *authorized* CDP training in Indiana … and offered to "renew" that credential….

(Filing No. 25 at 2) (emphasis in original). Specifically, in October 2019 Vaughn, on behalf of DTUI, sent emails marketing CDP training courses directly to Indiana residents Tamika Hinton of

7

Greentown, Indiana and Monique Roberts of Kokomo, Indiana. *Id.* at 4. The Defendants have also directly emailed persons who took SFD's CDP training in Indiana, including an email to Kristina Smith directing her to renew her certification. *Id.* at 6. The Defendants maintain a database of their students that has at least two Indiana Students, Zelidah Martinez Hoy of Bloomington and Rachel Dawson of Indianapolis ([Filing No. 25 at 7](#); [Filing No. 25-1](#)). SFD also alleges the Defendants have sent Indiana residents invoices totaling at least $14,595.00 for infringing training services ([Filing No. 25 at 7](#); [filing No. 25-2](#)). Lastly, in regard to Vaughn personally, SFD argues Vaughn travelled to French Lick, Indiana where, on behalf of DTUI, he provided diversity training to Cook Medical, a corporate client who is located in Indiana ([Filing No. 25 at 7](#)). Thus, SFD maintains the Defendants have the required minimum contacts with Indiana through "repeated direct solicitations to and transactions with residents of Indiana," therefore the Court has specific personal jurisdiction. *Id.* at 10.

In their reply, the Defendants contend the October 2019 emails SFD relies on are "evidence of third parties seeking out information from DTUI first, not the other way around;" the "invoices sent to the individuals were for trainings that were not based in Indiana;" and, the 2009 training in French Lick, Indiana, did not relate to the disputed marks and thus should not be included in the analysis for purposes of specific jurisdiction. ([Filing No. 27 at 3](#).)

In regard to the October 2019 emails, the Defendants point out that SFD does not assert that DTUI knew the recipients of these emails were Indiana residents or that it purposefully targeted them for being Indiana residents. A person does not provide her state of residence or domicile when signing up for the course, thus the Defendants assert they were unaware where these recipients resided. The Defendants assert that these "test drive" emails are sent out only after a person expresses interest in the courses by signing up on DTUI's website. ([Filing No. 27 at 4](#).)

8

Once these individuals request information from DTUI, an automatically-generated email is sent, thus the Defendants maintain the emails SFD relies on to show contacts were triggered by the unilateral activity of a third person. Regarding the renewal email cited by SFD, the Defendants note that SFD again does not assert that DTUI knew Kristina Smith was an Indiana resident. The Defendants argue that SFD "does not assert that DTUI contacted Ms. Smith for any other reason than as part of a mass marketing email to its list of email subscribers." (Filing No. 27 at 6.)

Turning to SFD's contention concerning enrolled students, the Defendants acknowledge DTUI has two individual students in its database with Indiana addresses, but contend these individuals' relationships with the forum state are "not determinative." (*Id.* at 8.) The Defendants argue that SFD has failed to tie these individuals to DTUI's alleged purposeful contact with Indiana and DTUI does not know how these individuals learned of its programs, because it did not market specifically to these individuals or target them because they were Indiana residents. Although they were residents of Indiana, Rachel Dawson enrolled in an online course while Zelidah Martinez Hoy attended a classroom program in Washington, DC—not Indiana. (*Id.*.) The Defendants maintain that jurisdiction only attaches where the training was held, not where each student is from or where a student has access to the Internet.

Lastly, in regard to the 2009 in-person training in French Lick, Indiana to Cook Medical Group, the Defendants argue that SFD has failed to connect this training to the "suit-specific conduct" necessary to establish personal jurisdiction. The Defendants explain that this "Training of Trainers" course provides large-scale trainings for organizations relating to cultural diversity and inclusion, and that no credentials are conferred at the end of the course. (Filing No. 27 at 9.) The Defendants contend SFD has the burden of proof here, and that SFD has provided no evidence that the 2011 training used any of the infringing marks. Relying on *Advanced Tactical*, the

9

Defendants state "[t]he only sales [and training] that would be relevant are those that were related to [DTUI's] allegedly unlawful activity," and this training does not qualify. 751 F.3d at 801.

The Court is persuaded that it does not have personal jurisdiction over the Defendants. Specific jurisdiction requires that the suit "arise out of" and "be related to" the minimum contacts with the forum state; a court cannot simply aggregate all of the defendant's contacts with the state. *Commissioning Agents*, 143 F. Supp. 3d at 787. The Court agrees with the Defendants that SFD has provided no evidence demonstrating that the 2009 in-person training in French Lick was related to the alleged unlawful activity, and it is therefore immaterial to the Court's personal jurisdiction analysis.

Thus, the alleged minimum contacts to establish personal jurisdiction over the Defendants are 1) operating an interactive website, 2) sending three emails to Indiana residents, and 3) the existence of two Indiana students on DTUI's student database. The Seventh Circuit has cautioned that "[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010).

In *Advanced Tactical*, plaintiff brought a trademark infringement suit against Real Action, alleging Real Action sold "PepperBall" branded projectiles that infringed on Advanced Tactical's trademark. 751 F.3d 796 (7th Cir. 2014). The Seventh Circuit explained that the "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 801 (quoting *Walden v. Fiore*, 134 S.Ct. 1115, 1126 (2014)). The district court found the necessary minimum contacts existed for personal jurisdiction based on the following facts:

> First, Real Action fulfilled several orders of the allegedly infringing projectiles for purchasers in Indiana; second, it knew that Advanced Tactical was an Indiana company and could foresee that the misleading emails and sales would harm Advanced Tactical in Indiana; third, it sent at least two misleading email blasts to a list that included Indiana residents; fourth, it had an interactive website available to residents of Indiana; and finally, it put customers on its email list when they made a purchase, thereby giving the company some economic advantage.

*Advanced Tactical*, 751 F.3d at 796. Ultimately, Seventh Circuit found that "none of these meets the standards that the Supreme Court has set." *Id.* The court explained that while it is true Real Action fulfilled a few orders after putting the allegedly infringing message on its website and in emails, Advanced Tactical provided no evidence that those sales had any connection with this litigation. *Id.* The court reasoned it did not know, for example, "whether the Indiana residents saw Real Action's post before making their purchase," and further that there was "nothing to suggest that any Indiana purchaser thought that Advanced Tactical had started selling PepperBalls." *Id.* The Seventh Circuit held that "[n]ot only did Advanced Tactical fail to link the few sales to Real Action's litigation-specific activity, but even if it did, it is unlikely that those few sales alone, without some evidence linking them to the allegedly tortious activity, would make jurisdiction proper." *Id.* (citing *Calder v. Jones*, 465 U.S. 783 (1984)). "To hold otherwise would mean that a plaintiff could bring suit in literally any state where the defendant shipped at least one item." *Id.*

The Court finds the contacts alleged in SFD's Complaint to be closely akin to the contacts considered in *Advanced Tactical*. SFD has provided no evidence that Defendants' sale of the allegedly infringing goods and services was directly related to any information on their website. Additionally, any allegedly infringing emails were sent after sales for services were conducted with the Defendants or after the consumers themselves reached out to the Defendants, and a defendant cannot be brought into a jurisdiction through the unilateral activity of a third-party. And,

11

even if SFD had shown any sales were related to the Defendants' alleged infringement on its websites and emails, exercising personal jurisdiction in any state the Internet is accessible would mean a plaintiff could bring suit against the Defendants in literally any state. This would "run[] counter to the approach the Court has followed since *International Shoe*, and that it reaffirmed as recently as February 2014 in *Walden*." *Id.* at 801-02.

> As the Seventh Circuit further explained in *Advanced Tactical*,
>
> The Supreme Court has not definitively answered how a defendant's online activity translates into "contacts" for purposes of the "minimum contacts" analysis. To the contrary, it expressly "le[ft] questions about virtual contacts for another day" in *Walden. Id.* at 1125 n. 9. We have faced that problem on several occasions, however, and thus far it has appeared to us "that the traditional due process inquiry [ ] is not so difficult to apply to cases involving Internet contacts that courts need some sort of easier-to-apply categorical test." *Illinois v. Hemi Grp. LLC,* 622 F.3d 754, 759 (7th Cir. 2010) (citing *Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 550 (7th Cir. 2004) ("[A]lthough technological advances may alter the analysis of personal jurisdiction, those advances may not eviscerate the constitutional limits on a state's power to exercise jurisdiction over nonresident defendants.")); see also *Tamburo v. Dworkin,*601 F.3d 693, 703 n. 7 (7th Cir. 2010) (declining to endorse a special jurisdictional test for internet cases). Thus, "[o]ur inquiry boils down to this: has [defendant] purposefully exploited the [Indiana] market" beyond simply operating an interactive website accessible in the forum state and sending emails to people who may happen to live there? *be2 LLC v. Ivanov,* 642 F.3d 555, 558–59 (7th Cir. 2011). Has the defendant, in brief, targeted Indiana somehow? *Id.*

*Id.* at 802-803. Here, the Court is persuaded that Defendants have merely operated an interactive website accessible in Indiana and sent emails to people who happen to live in Indiana. The Defendants have not targeted Indiana.

The Defendants' website was directed at the entire world, not expressly aimed at the residents of Indiana. SFD has provided no evidence that the Defendants were targeting Indiana residents, or were even aware that they were interacting specifically with Indiana residents. The test drive emails sent by the Defendants to Hinton and Jones were automatically generated, and neither Hinton nor Jones provided their state of residence when signing up for DTUI's courses.

12

The renewal email sent by the Defendants to Smith was also automatically generated as a part of a mass marketing email sent to the Defendants' list of email subscribers. Smith's contact information was only added to DTUI's general contact list after she requested more information regarding classes in the Washington, D.C. area (Filing No. 27 at 7). *Advanced Tactical* rejected the idea that an email sent to someone who happens to be in a certain state establishes significant contact with that state. "The fact that Real Action maintains an email list to allow it to shower past customers and other subscribers with company-related emails does not show a relation between the company and Indiana. Such a relation would be entirely fortuitous, depending wholly on activities out of the defendant's control." 751 F.3d at 803. Just as Real Action's email list was insufficient to establish a relationship between it and the forum state in *Advanced Tactical*, DTUI's email list in is insufficient to establish that relationship here.

As a final note, the two Indiana students that are listed on the Defendants' student database participated in training located in Washington D.C. or online, rather than in-person in Indiana. Finding jurisdiction under these circumstances would mean that jurisdiction exists not only where the Defendants' training was held, but in the home state of anyone who attended that training or in any state where an internet training was completed. Under the Seventh Circuit's requirements for determining whether the purposeful-direction requirement is met, the Defendants clearly did not expressly aim their conduct at the forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010). This Court lacks personal jurisdiction over the Defendants.

There are no allegations that Vaughn operated outside of his official capacity in allegedly infringing upon DTUI's marks. Indeed, Plaintiff alleged that "Vaughn has known of, directed and controlled the infringing actions of DTUI.com." (Filing No. 1 at 3 ¶11). Because the Court finds there is no personal jurisdiction over DTUI, it need not address the arguments regarding Vaughn

13

individually. See *Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*, 2017 WL 4123050, at *7 (S.D. Ind. Sept. 18, 2017) (Personal jurisdiction for an individual cannot be based upon an individual's role in a company where the corporate formalities have been observed).

## IV.   CONCLUSION

Plaintiff, The Society for Diversity, Inc. has failed to make the requisite *prima facie* showing that the Court has personal jurisdiction over the Defendants DTUI.com, LLC and Billy Vaughn. For the reasons stated above, the Defendant's Motion to Dismiss ([Filing No. 15](Filing No. 15)) is **GRANTED** and the Complaint is dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2). The **dismissal without prejudice**, meaning that the Plaintiff could refile the case in a different court.  *See Philpot v. Celebrity Cafe.Com, LLC*, No. 1:14-cv-01982-TWP-DML, 2015 U.S. Dist. LEXIS 112011, at *16 (S.D. Ind. Aug. 25, 2015) (this court granted defendant's motion to dismiss for lack of personal jurisdiction and dismissed without prejudice); *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013)(Dismissal for lack of personal jurisdiction under Rule 12(b)(2) is a dismissal without prejudice, not with prejudice, because it is not a judgment on the merits).

**SO ORDERED.**

Date:  7/22/2020

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Melanie Ann Eich
OVERHAUSER LAW OFFICES LLC
meich@overhauser.com

Paul B. Overhauser
OVERHAUSER LAW OFFICES, LLC
poverhauser@overhauser.com

Jenna M. Shives
QUARLES & BRADY LLP (Indianapolis)
jenna.shives@quarles.com

Joel E. Tragesser
QUARLES & BRADY LLP
joel.tragesser@quarles.com

Jordan Rae Downham
QUARLES & BRADY LLP
jordan.downham@quarles.com